United States District Court
Southern District of Texas
**ENTERED**
July 29, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Debra Denise Chukwudi, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-23-458 |
| | § | |
| Martin O'Malley,[1] | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Debra Denise Chukwudi appeals the Social Security Administration Commissioner's final decision denying her application for Social Security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 12, and her accompanying brief in support, ECF No. 13. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 3, 5, 6. The motion for summary judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.[2]

### 1. Procedural Posture

Chukwudi applied for social security benefits under Titles II and XVI of the Social Security Act on May 14, 2020, and October

---

[1] Kilolo Kijakazi was the Acting Commissioner of the Social Security Administration when Debra Chukwudi filed this case but no longer holds that office. Martin O'Malley is Commissioner of the SSA and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

[2] While the Commissioner's response to Chukwudi's Motion for Summary Judgment, ECF No. 15, is not styled as an affirmative motion for summary judgment, the Commissioner does seek in the body of the motion to have the Commissioner's decision affirmed and the case dismissed with prejudice. *Id.* at 6. The court grants that relief.

3, 2019, respectively.[3] Tr. 73, 74, 95, 96. Chukwudi alleged a disability onset date of June 15, 2017, due to a malignant brain tumor, seizures, a torn ligament in her left knee, and back problems. Tr. 62, 68. The SSA denied Chukwudi's applications initially on September 21, 2020, and upon reconsideration on May 10, 2021. Tr. 66, 71, 73, 74, 83, 93, 95, 96.

At Chukwudi's request, Administrative Law Judge (ALJ) Helen Strong held a telephonic hearing on November 18, 2021. Tr. 27–60 (hearing transcript). At the hearing, Chukwudi, two medical experts (ME), and a vocational expert (VE) testified. Tr. 28. Chukwudi's counsel was present and examined the witnesses. Tr. 34, 45, 55.

Chukwudi testified that she attended school through the eleventh grade and worked as a home healthcare provider for her boyfriend and her daughter. Tr. 33, 34. Chukwudi explained that she helped her boyfriend and her daughter by bathing them, washing their clothes, and cooking for them. Tr. 35. She testified that she would work for approximately two and a half hours in the morning with her daughter and two and a half hours in the afternoon with her boyfriend. Tr. 38–40. She worked seven days per week. Tr. 41. Chukwudi explained that she worked "a little bit every now and then" because she needed breaks when she became out of breath or lightheaded. Tr. 35–36, 40. After helping her boyfriend in the afternoon, Chukwudi would spend the remainder of her day cooking for herself or watching television. Tr. 41.

Chukwudi's counsel discussed Chukwudi's history of chronic headaches with blurry vision, chest pain, and shortness of breath.

---

[3] For the sake of convenience, the court cites only to the 2019 version of the regulations. The parties have not identified, and the court is unaware of, any difference between the cited regulations in effect in October 2019 versus May 2020.

Tr. 43. Chukwudi's counsel also emphasized Chukwudi's testimony that she needed breaks throughout the day and argued that Chukwudi's impairments prevented her from sustaining a forty-hour work week without interruption, unscheduled breaks, or unexcused absences. Tr. 43.

Richard Cohen, M.D., a psychiatric ME, testified that the case record contained no psychiatric records or evidence of psychiatric symptoms. Tr. 44–45. Dr. Cohen testified that Chukwudi did not have any medically determinable mental impairments or any work related mental limitations. Tr. 45.

Subramanian Krishnamurti, M.D., who practiced internal medicine and cardiology, testified that, based on the record evidence, Chukwudi had severe impairments of "high blood pressure[,] . . . meningioma, [and] excessive brain headaches[,] probably due to hypertension and the meningioma." Tr. 46–47. Dr. Krishnamurti testified that Chukwudi's impairments did not meet or equal any impairment in the Listing.[4] Tr. 47. Dr. Krishnamurti explained that he considered "[m]ainly [listing] 11.05 brain, benign brain tumors" and that high blood pressure "does not carry any listings." Tr. 47.

As for Chukwudi's residual functional capacity, Dr. Krishnamurti opined that Chukwudi could frequently lift ten pounds, could occasionally lift twenty pounds, and could stand and walk a total of six hours in an eight-hour workday. Tr. 48. Dr. Krishnamurti opined that Chukwudi could not use ladders, scaffolds, or ropes and could not operate heavy machinery or be exposed to heights. *Id.* Chukwudi could occasionally be exposed to extreme temperatures and had no limitations in the use of her

---

[4] The "Listing" is discussed below in Part 3.C.

upper extremities for reaching, handling, fingering, feeling, grasping, or maneuvering. *Id.*

The ALJ asked the VE to consider a person of Chukwudi's age, education, and vocational history with various functional limitations that the ALJ ultimately recognized in her decision. Tr. 51. The VE opined that such a person could not perform Chukwudi's past work but could perform other work at the light exertional level such as hotel housekeeper, price tag ticketer, routing clerk, or companion. Tr. 51–53.

The ALJ issued her decision on November 30, 2021, finding that Chukwudi was not disabled from June 15, 2017, through the decision date. Tr. 14. Chukwudi requested review of the ALJ's decision, which the Appeals Council denied on July 14, 2022. Tr. 1–6. Chukwudi timely filed a complaint and an application to proceed in forma pauperis in federal court on September 1, 2022. *See Chukwudi v. Comm'r of Soc. Sec.*, 4:23-mc-01483, ECF No. 1 (S.D. Tex. Sept. 1, 2022).

### 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Both programs use the same standard to evaluate an applicant claiming disability. *See* 20 C.F.R §§ 404.1520, 416.920 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five step approach to determine whether the claimant is disabled. *See Schofield v. Saul,* 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul,* 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill,* 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin,* 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.,* 376 F.3d 471, 476 (5th Cir. 2004)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).

### 3. *Analysis*

#### A. *Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2019).

The ALJ found that Chukwudi had not engaged in substantial gainful activity since June 15, 2017, the alleged onset date. Tr. 16. This finding is not in dispute.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2019) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c) (2019). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2019).

The ALJ found that Chukwudi had severe impairments of "migraine/chronic headaches, meningioma, hypertension, and obesity." Tr. 16. The ALJ found that Chukwudi's allegations of a malignant brain tumor, seizures, torn ligaments in the left knee, and back problems were not medically determinable impairments because the record contained no such evidence of those alleged impairments. *Id.* 16. These findings are not in dispute.

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2019); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a) (2019). If all the criteria of a Listing section are met or equaled, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Id.*

The ALJ found that Chukwudi did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. Tr. 16–17.

The ALJ considered Listing section 11.01 for neurological impairments, because migraines, for which there is no listing, manifest with neurological symptoms. Tr. 16. The ALJ determined that Chukwudi's headaches did not meet or medically equal any impairment listed in section 11.01. *Id.* The impairments listed in section 11.01 include conditions such as epilepsy, vascular insult to the brain, benign brain tumors characterized by disorganization of motor function or a marked limitation in physical functioning, Parkinsonian Syndrome, cerebral palsy, multiple sclerosis, and others not alleged by Chukwudi or supported by the record evidence. *See* Listing § 11.01 et seq.

The ALJ determined that Chukwudi's hypertension and obesity, evaluated singly and in combination with other impairments, did not meet or medically equal the criteria of any impairment in the Listing. Tr. 17. The ALJ stated that she

nonetheless considered the limiting effects of these impairments when determining Chukwudi's residual functional capacity. *Id.* The ALJ's step three findings are not in dispute, and the ALJ did not err.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.920(e) (2019) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2019). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2019); *see also* 20 C.F.R. § 416.945(a)(1) (2019); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2019); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

The ALJ determined that Chukwudi had the RFC to perform work at the light exertional level with the following limitations:

> [She] can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and or walk with normal breaks for a total of about six hours in an eight hour workday; sit with normal breaks for a total of about six hours in an eight hour workday; push and or pull within those stated exertional limitations. Regarding postural limitations, [she] can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; but can never climb ladders, ropes, and scaffolds. There are no established

> manipulative, visual, and communicative limitations.
> Regarding environmental limitations, [she] is unable
> to perform work around hazardous, unguarded
> machinery, work at unprotected heights, and is
> limited to occasional exposure to extreme heat and
> extreme cold. Regarding mental limitations, there are
> no established mental medically determinable
> impairments and no work-related mental limitations.

Tr. 17.

In reaching this RFC finding, the ALJ considered the entire record, including Chukwudi's hearing testimony and the medical records. Tr. 18 (discussing and citing to Chukwudi's hearing testimony and medical records). The ALJ compared Chukwudi's testimony regarding her daily activities and limitations to the record medical evidence and determined that, although Chukwudi's impairments could reasonably be expected to cause her alleged symptoms, Chukwudi's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence. *Id.*

For example, Chukwudi testified that, at the time of the hearing, she worked as a home healthcare provider for her boyfriend and her daughter and assisted them with bathing, grooming, preparing meals, and other household chores. Tr. 34–35, 38–40. She stated that she could not stand very long and would become lightheaded and short of breath. Tr. 40. However, while the medical records do show complaints of chest pain and headaches, they also show mostly normal physical examinations. Tr. 18 (ALJ's discussion of Chukwudi's complaints and medical records and statement that "Despite [Chukwudi's] allegations, her physical examinations were unremarkable."); Tr. 326, 382, 388, 392 (medical records documenting Chukwudi's complaints of headaches and chest pain); Tr. 328, 342, 393, 405, 423 (medical records showing normal physical examinations).

On January 28, 2017, Chukwudi presented to the emergency department via ambulance complaining of a headache. Tr. 382. Although Chukwudi's family reported that she became "unresponsive" and was "not moving" while in the triage area, Chukwudi's condition improved within several hours. Tr. 382–83. Subsequent observation and examinations revealed that Chukwudi's altered mental status was due to alcohol intoxication or withdrawal, and Chukwudi was discharged without medication or specialized follow up care but with instructions to visit her primary care provider. Tr. 384.

On July 2, 2021, a cardiologist examined Chukwudi in response to her chest pain and cleared her for discharge after reviewing the results of a CT scan of the head, a chest x-ray, and an echocardiogram. Tr. 402–10.

The ALJ also considered opinion evidence and found the Disability Determination Services' (DDS) opinions to be unpersuasive. Tr. 19. DDS staff determined that Chukwudi's only severe impairment was migraines and that there was otherwise insufficient medical evidence in the record to further evaluate Chukwudi's claim. Tr. 64, 70, 80–81, 90–91. The ALJ disagreed with these findings and determined that the radiological evidence, laboratory evidence, and physical findings supported a finding that Chukwudi had impairments that limited her ability to perform basic work activities. Tr. 19.

Dr. Cohen, the psychiatric ME, opined that Chukwudi did not have any established mental impairment because there were no allegations, diagnoses, or treatment for any mental impairment. Tr. 19. The ALJ found this opinion to be persuasive because the record contains no evidence establishing a mental impairment. *Id.*

The ALJ found Dr. Krishnamurti's RFC opinion to be persuasive because Dr. Krishnamurti reviewed all medical

evidence, cited evidence supporting his testimony, and analyzed the issues in accordance with the SSA's regulations. Tr. 19–20. The ALJ adopted Dr. Krishnamurti's RFC and elaborated upon it. *Id.*

In support of her RFC determination, the ALJ explained that Chukwudi "has not generally received the type of medical treatment one would expect for a totally disabled individual" and characterized Chukwudi's treatment as "essentially routine and/or conservative." Tr. 20. The ALJ explained that "Although [Chukwudi] has no motor or sensory deficits, [she] has chronic headaches, which could interfere with her ability to lift and/or carry. For the same reasons, she is limited to occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; but can never climb ladders, ropes, and scaffolds." *Id.* The ALJ's RFC is supported by substantial evidence and complies with the regulatory framework.

Chukwudi argues that the ALJ erred in determining the RFC because she: (1) did not accommodate Chukwudi's migraine/chronic headaches when crafting the RFC; (2) relied on the ME's assessment instead of performing her own function-by-function assessment; and (3) failed to address how Chukwudi could perform the demands stated in the RFC on a regular and continuing basis. ECF No. 13 at 7. The court is not persuaded.

The ALJ expressly accommodated Chukwudi's migraines and the accompanying limitations when crafting the RFC. The ALJ explained that Chukwudi "has chronic headaches, which could interfere with her ability to lift and/or carry," and limited Chukwudi to work at the light exertional level and carrying 10 pounds frequently and 20 pounds occasionally. Tr. 17, 20. The medical records do not support limitations beyond those the ALJ recognized. The ALJ properly accommodated Chukwudi's

migraines, consistent with her testimony and the medical evidence.

The ALJ is entitled to rely on the ME's testimony. *See Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (stating that "[t]he ALJ was entitled to rely upon the analysis of the independent medical expert" as substantial evidence in determining disability status).

The ALJ's RFC determination must include an assessment of the claimant's physical abilities, mental abilities, and other abilities affected by the claimant's impairments. *See* SSR 96-8p (stating that the ALJ's RFC assessment "must . . . identify the individual's functional limitations . . . on a function-by-function basis, including the functions in paragraphs (b), (c), and (d)" of 20 C.F.R. §§ 404.1545, 416.945); 20 C.F.R. §§ 404.1545, 416.945 (2019). Physical abilities include sitting, standing, walking, lifting, carrying, pushing, pulling, and manipulative or postural functions such as reaching, handling, stooping, or crouching. 20 C.F.R. § 404.5145(b); 20 C.F.R. § 416.945(b). Although mental impairments are not present in this case, mental abilities include the ability to understand, remember, and carry out instructions and the ability to respond appropriately to others and to work pressures in a work setting. 20 C.F.R. § 404.5145(c); 20 C.F.R. § 416.945(c). Impairment-specific abilities include the ability to work in certain environments, and these limitations might be necessary when a claimant has impairments such as epilepsy, skin impairments, or loss of vision, hearing, or other senses. 20 C.F.R. § 404.5145(d); 20 C.F.R. § 416.945(d).

Here, the ALJ performed a proper function-by-function analysis by considering and incorporating numerous functional limitations into the RFC. For example, the ALJ imposed exertional limitations by limiting Chukwudi to light work, limiting the number of hours she could stand or walk, and limiting her ability

to lift and carry by frequency and weight. Tr. 17. The ALJ imposed postural limitations by limiting Chukwudi to occasionally climbing ramps and stairs, never climbing ropes and ladders, and occasionally stooping, kneeling, and crawling. *Id.* The ALJ determined that there were "no established manipulative, visual, and communicative limitations" and "no established mental medically determinable impairments and no work-related mental limitations." *Id.* Chukwudi does not point to any evidence that she believes was overlooked by the ALJ. Chukwudi has not explained how any specific medical evidence warrants more functional limitations than the ALJ recognized. The ALJ properly performed a function-by-function assessment in determining the RFC.

The ALJ was not required to make a specific finding regarding Chukwudi's ability to perform the demands of her RFC on a regular and continuing basis. "[N]othing in . . . [prior Fifth Circuit caselaw] suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Instead, such a finding is only necessary in a "situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms," such as if degenerative disc disease, for example, prevented a claimant from maintaining employment because every number of weeks she would lose movement in her legs. *Id.* "The claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Id.* Here, there is no evidence to suggest that Chukwudi could not maintain employment on a regular and continuing basis. As stated by the ALJ, Chukwudi lacked significant treatment history that is typical among totally disabled individuals, and the treatment in the record appeared routine and conservative. Tr. 20. The ALJ did not err.

13

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2019). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2019).

Based on the VE's hearing testimony and the postural and exertional limitations recognized in the RFC, the ALJ determined that Chukwudi could not perform her past work. Tr. 21. This finding is supported by substantial evidence and is not in dispute.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2019). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2019).

The ALJ found that Chukwudi could perform jobs that exist in significant numbers in the national economy. Tr. 21–22. The ALJ relied on the VE's testimony that an individual of Chukwudi's age, education, work experience, and RFC would be able to work as a hotel housekeeper, price tag ticketer, routing clerk, or companion. *Id.*; *see also* Tr. 51–53 (VE's relevant testimony).

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Chukwudi's attorney had the opportunity to cross-examine the VE, the VE's testimony is

substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

Building off of her challenge to the RFC, Chukwudi argues that, because the ALJ's RFC finding failed to incorporate limitations related to each of her severe impairments, the ALJ's step five determination is not supported by substantial evidence. As stated in Part 2.D. above, the ALJ's RFC determination was proper. Therefore, reliance on the RFC at step five was not in error.

### 4. *Conclusion*

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, Chukwudi's Motion for Summary Judgment, ECF No. 12, is **DENIED** and the Commissioner's final decision is **AFFIRMED**.

Signed at Houston, Texas on July 26, 2024.

_____

Peter Bray
United States Magistrate Judge

15